(No. 49147.—

NANCY SQUIRE, a Minor, Appellant, v. ECONOMY FIRE & CASUALTY COMPANY, Appellee.

*Opinion filed November 30, 1977.*

Peregrine, Stime & Newman, Ltd., of Wheaton (Roy I. Peregrine, of counsel), for appellant.

Rathje, Woodward, Dyer & Burt, of Wheaton (R. Terence Kalina and Henry J. Burt, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This case involves the construction of the uninsured motorist coverage provisions contained in an automobile insurance policy and in a subsequent endorsement to that policy. The circuit court of Du Page County entered a declaratory judgment in favor of the insured, holding that the $10,000 coverage of the primary policy could be stacked with the $10,000 coverage of the endorsement for a total recovery of up to $20,000. The Appellate Court, Second District, reversed (43 Ill. App. 3d 113), and we granted the plaintiff's petition for leave to appeal. We reverse.

On April 5, 1973, plaintiff, Nancy Squire, was standing on a parkway in Glen Ellyn, Illinois, when an uninsured motorist drove off the road, striking a parked car which in turn struck and seriously injured her. She filed a claim under the family automobile insurance policy and subsequent endorsement issued to her parents by the defendant, Economy Fire & Casualty Company. As an "insured person" under that policy and endorsement, plaintiff was insured against being injured (by an uninsured motorist) while a pedestrian, as well as while riding in an automobile.

The primary policy was issued for a period covering one year, from July 12, 1972, to July 12, 1973. Initially, the policy contained one declaration sheet which enumerated various "coverages" (*e.g.*, bodily injury, property damage, collision) available for one automobile and the premiums paid for each. "Coverage J" indicated that the insureds had received, in return for a premium of $4, "Family Protection," with limits of $10,000 for each person injured, up to a total of $20,000 for each accident. Part IV of the policy explained that Coverage J indemnified family members injured by the operator of an uninsured automobile. In addition, the policy stated as follows:

"The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. ***

\* \* \*

Exclusions. This policy does not apply under Part IV:

(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile;

\* \* \*"

" '[I]nsured automobile' means:

(a) an automobile described in the policy for

which a specific premium charge indicates that coverage is afforded,

* * *

(a) The limit of liability for family protection coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages * * *."

Approximately eight months later, the Squires purchased an endorsement to their primary policy, providing insurance benefits for a second family automobile for a period covering the remainder of the year, March 17, 1973, to July 12, 1973. Toward this end, a second declaration sheet was attached to the primary policy indicating the various "coverages" and the premiums to be paid therefor. It again included "Family Protection" (uninsured motorist coverage), with limits of $10,000 for each person injured, up to a total of $20,000 for each accident, for which the Squires paid a premium of $1.

In settlement of her claim, the defendant insurance company first offered plaintiff $8,000. Then, after the Squires retained an attorney, defendant raised its offer to $10,000, which it contended was the limit of its liability under the primary policy and endorsement. Believing the limit to be $20,000, plaintiff, by John W. Squire, her father and next friend, brought this action for declaratory judgment. The circuit court, relying on *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, granted plaintiff's motion for judgment on the pleadings. The court held that the defendant had failed to limit plaintiff's uninsured motorist coverage to $10,000, that the insurance coverage for each of the two family automobiles included a provision for $10,000 uninsured motorist coverage, and that the policy and endorsement provide for a total coverage of up to $20,000 as a result of plaintiff's injuries. The appellate court, however, distinguished *Glidden* and found that the uninsured motorist coverage in the policy and endorsement could not be

stacked, thus limiting plaintiff's recovery to $10,000. 43 Ill. App. 3d 113, 115-16.

Plaintiff maintains that by paying an additional $1 premium for "family protection," plaintiff's parents purchased an additional $10,000 per person in uninsured motorist coverage. Under such circumstances, she contends, where an insurance company does not otherwise limit its uninsured motorist coverage, and an insured, while a pedestrian, is injured by an uninsured motorist, the insured should be able to recover up to the maximum limitations of the uninsured motorist provisions covering each of the two automobiles. Plaintiff argues that defendant's attempt to limit its liability is ambiguous in that defendant failed to provide in the uninsured motorist clause that stacking of coverage is prohibited or that $10,000 per person is the limit of the company's liability "regardless of the number of insured automobiles to which this insurance applies," as it specifically stated under the "Basic Personal Injury Protection" coverage. Because such a limitation easily could have been included had defendant so intended, and because the ambiguity must be resolved in favor of the insured, plaintiff maintains that she is entitled to recover up to $20,000.

The defendant responds that its provision is plain and unambiguous in limiting recovery to $10,000 per person, and that simply because the personal injury section is clearer in precluding stacking does not mean that the limitation under "Family Protection" is ambiguous. Defendant further contends, and the appellate court agreed, that the parties did not contract for additional indemnification. Rather, plaintiff paid for and received protection, up to $10,000, against accidents caused by uninsured motorists while the insureds were riding in the second car. Plaintiff's parents, they argue, never reasonably expected to receive an additional $10,000 in indemnification when they paid the second premium, as evidenced by

the reduced rate of $1, compared with $4 for the first automobile.

Although a number of other jurisdictions have considered issues very similar to the one presented here (see Annot., 28 A.L.R.3d 551 (1969); see also *Federated American Insurance Co. v. Raynes* (1977), 88 Wash. 2d 439, 563 P.2d 815), the decision of each necessarily turns upon the particular uninsured motorist statute involved. In any event, the various jurisdictions which have considered this issue are not unanimous, and it is still too early to identify a "majority rule."

This court last considered the question of stacking uninsured motorist coverage in *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, where the defendant insurance company had issued three separate policies on three different automobiles to one insured, each policy providing uninsured motorist coverage of $10,000 for each person injured. Notwithstanding the "other insurance" provision in each policy (which called for a prorating of uninsured motorist coverage among all other insurance policies) this court held that an insured who was struck and injured by an uninsured motorist could stack his coverage and collect up to $30,000. The court reasoned that "[a]n insurance policy is not to be interpreted in a factual vacuum," that in determining the possible ambiguity of a policy under particular factual circumstances it is important to determine what the parties reasonably contemplated, and that under the specific circumstances in *Glidden* (where three separate policies were written by the same company) the "other insurance" clauses were ambiguous and inapplicable because the plaintiff could reasonably expect to receive additional coverage in consideration of the additional premiums paid (57 Ill. 2d 330, 336).

The appellate court sought to distinguish *Glidden* on the ground that *Glidden* involved the effect of "other

insurance" clauses on the insureds' right to stack the coverage of three separate policies issued by the same company, whereas the instant case does not involve an "other insurance" clause and concerns "just one policy" (43 Ill. App. 3d 113, 115). That distinction is inapposite, because even though *Glidden,* unlike the instant case, did involve an "other insurance" clause, the applicability of the court's reasoning in *Glidden* is not confined to the effects of other insurance clauses upon stacking the coverage contained in separate policies. Rather, the court also was addressing the broader question of the construction of the intent of insureds who pay more than one premium to a single insurer for uninsured motorist coverage. (See generally *Glidden* at 335-36.) Similarly, in the instant case, the parties agree that the question presented is, "What did the parties reasonably contemplate when plaintiff's parents paid an additional premium for an endorsement to their existing policy?"

To the extent that it is possible to reconstruct such "intent," we think the parties must have intended the additional $1 premium to purchase one of two categories of additional insurance benefits: Either they intended it to purchase (1) indemnification for injuries resulting from additional risks beyond those covered by the primary policy, or (2) additional indemnification for injuries resulting from risks that already were covered by the primary policy.

We turn our attention first to defendant's contention that the coverage reasonably contemplated under the endorsement was protection against additional risks, *i.e.,* protection against accidents caused by uninsured motorists while the insureds were riding in the second car. The second premium, it asserts, was in consideration of the added risk incurred by the defendant and served to circumvent the "exclusion" under part IV of the policy, which otherwise would have prevented the coverage from

applying to "bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative." Plaintiff, however, argues that she already had such coverage because the exclusion violates section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1971, ch. 73, par. 755a) and therefore is unenforceable under section 442 of the Code (Ill. Rev. Stat. 1971, ch. 73, par. 1054). We agree.

Section 143a(1) of the Illinois Insurance Code (Ill. Rev. Stat. 1971, ch. 73, par. 755a(1)) expresses the public policy of this State concerning uninsured motorist coverage. It provides that no automobile liability insurance policy shall be issued in this State unless coverage is provided therein, in limits set forth in section 7—203 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 7—203) (a minimum of $10,000 for each person injured, up to $20,000 for each accident), against damages caused by uninsured motorists. The language of the statute is plain and unambiguous in mandating that each policy must contain the specified coverage. *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 335.

In *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 4, this court explained that the legislative purpose behind section 143a is "to place the policyholder in substantially the same position he would occupy, so far as his being injured or killed is concerned, if the wrongful driver had had the minimum liability insurance required by the Financial Responsibility Act [Ill. Rev. Stat. 1969, ch. 95½, par. 7A—101 *et seq.*]. [Citations.]" Accord, *Barnes v. Powell* (1971), 49 Ill. 2d 449, 453; *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 79.

In *Barnes v. Powell* (1971), 49 Ill. 2d 449, in which the facts are virtually identical to those of *Madison County Automobile Insurance Co. v. Goodpasture* (1971), 49 Ill. 2d 555, plaintiff was injured while riding as a passenger in

her own insured automobile. The accident which gave rise to the injuries was caused by the driver of the vehicle, who was uninsured. Plaintiff sought indemnification for her injuries under the uninsured motorist provision in her insurance policy, which provided that the company would pay all sums which the insured would be legally entitled to recover from the owner or operator of an uninsured automobile as a result of injuries arising out of the ownership or use of such uninsured vehicle. An "uninsured automobile" was defined in the policy as a vehicle for which there was "no bodily injury *** insurance applicable *** for the use of such automobile." (49 Ill. 2d 449, 451.) In addition, the policy provided that the term "uninsured automobile" excluded any insured vehicle. In each case, this court held that, under these circumstances, a construction of the uninsured motorist clause in the policy which prevented the plaintiff from recovering thereunder contravened the public policy expressed in section 143a. The court held that, notwithstanding contrary provisions in the policy, the purpose of section 143a is to protect policyholders in general against injuries caused by uninsured motorists, and to insure minimum coverage whether or not the vehicle in which the uninsured motorist is riding is insured. 49 Ill. 2d 449, 454-56.

Although this court has not, before now, considered the validity of the particular exclusion involved in this case, the appellate court, relying upon our decision in *Barnes,* considered this issue at length in *Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill. App. 3d 547. In *Doxtater,* an insured was injured in a collision between the motorcycle on which he was riding and a vehicle driven by an uninsured motorist. Plaintiff's automobile insurance policy was issued by defendant and included uninsured motorist coverage, but the motorcycle was not listed on the declaration page. In addition, the policy provided an "exclusion," the effect of which was

virtually identical to that of the exclusion in the policy at bar, which read:

"THIS INSURANCE DOES NOT APPLY:

\* \* \*

(b) To bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, if such vehicle is not an owned motor vehicle:

\* \* \*

Owned Motor Vehicle—means the motor vehicle \*\*\* described in the declarations \*\*\*."

The court held that the above exclusion conflicted with the underlying purpose of section 143a of the Illinois Insurance Code and therefore was rendered unenforceable by the provisions of section 442 (Ill. Rev. Stat. 1967, ch. 73, par. 1054). Relying heavily upon the policies expressed in *Barnes,* the court stated:

"Although we recognize that the facts of *Barnes v. Powell* are distinguishable from the facts at bar, we nonetheless cannot overlook the Supreme Court's statements therein regarding the legislative intent behind section 143a. The expansive interpretation applied by a majority of that court leads us to conclude that, presented with the issue at bar, our Supreme Court would interpret Section 143a of the Insurance Code as a direction to insurance companies to provide uninsured motor vehicle coverage for 'insureds,' regardless of whether, at the time of injury, the insureds occupied or operated vehicles declared in the subject policy." (8 Ill. App. 3d 547, 552.)

In *Heritage Insurance Co. v. Phelan* (1974), 59 Ill. 2d 389, 394-95, this court quoted the above passage from the appellate court's opinion in *Doxtater* and stated:

"It is clear from the holdings of *Barnes, Doxtater,* and *Goodpasture* and from the language of the statute itself that the legislative

> intent was to provide extensive uninsured-motorist protection for those who are 'insureds' under an automobile liability policy."

Thus, having previously adopted the appellate court's reasoning in *Doxtater,* it is well settled that section 143a requires coverage of insured persons regardless of the motor vehicle the uninsured motorist is driving, and regardless of the vehicle in which the insured person is located when injured. Insofar as the exclusion contained in the policy at bar would make coverage dependent upon the insured not being in a vehicle unlisted in the policy, that exclusion violates section 143a and is rendered unenforceable by section 442.

Because the exclusion of risks was illegal and unenforceable, it follows that, in consideration of the first premium of $4, the insureds already had received protection, up to $10,000, against accidents caused by uninsured motorists while the insureds were riding in the second car. Defendant's contention that the second premium of $1 was intended to provide such protection therefore must fail.

Defendant also maintains that even if the second premium were not intended to cover additional risks, the intentions of the parties were set out in the policy, and that the policy limited coverage to $10,000 regardless of the number of vehicles to which the insurance applied. This contention also must fail, because when an insurer attempts to limit its liability under the uninsured motorist provision of its policy, such limitation must be construed liberally in favor of the policyholder, and most strongly against the insurer. (*Barnes v. Powell* (1971), 49 Ill. 2d 449, 454.) Therefore, had the insurance company intended the additional $1 to provide anything other than an additional $10,000 indemnification, it should have so stated. Instead, defendant limited its liability under the uninsured motorist provision to the amount "stated in the

declaration as applicable to 'each person'." Since there are two declaration pages, both setting limits of "$10,000 each person," the meaning of the defendant's limitation is ambiguous in this situation and must be construed in favor of the insured.

Finally, defendant points out that *Glidden,* in determining the intentions of the parties, relied in part on the premiums paid for coverage of each car being identical, whereas the premiums paid for coverage of each car by the plaintiff at bar were not identical. Defendant maintains that the inequality of premiums indicates that additional indemnification was not intended, but rather that the insureds were paying for the added exposure which the insurance company would suffer by having two insured automobiles on the road. Plaintiff, however, put forth several explanations for the apparent inequality in premiums, the most convincing of which is that, unlike the situation in *Glidden,* the coverage purchased on the second declaration page was for a much shorter duration (four months) than the coverage under the first declaration page (12 months), with a commensurate decrease of risk and exposure to the defendant. This difference between periods of coverage accounts for the difference between the two premiums.

While the parties' expectations regarding the uninsured motorist coverage purchased by the second premium are admittedly unclear, it is clear that the insureds expected to receive something for their money. Certainly they had no intention of paying the defendant for coverage which they were already receiving. We therefore conclude that the $1 premium purchased additional indemnification for injuries resulting from the same risks covered under the primary policy. As this court stated in *Glidden,*

> "It is true that an insured might end up in a case such as this in a better situation than if the

wrongdoer had been insured to the minimum requirements of the Financial Responsibility Law. That, however, is not material as long as he pays for the coverage. The insured is better off because he paid additional premiums. If there is to be a 'windfall' in this situation, it should be to the insured, who paid the several premiums, rather than to the insurer, which collected them." 57 Ill. 2d 330, 336.

We hold that plaintiff may stack the uninsured motorist coverage under "Coverage J" of her policy and endorsement and recover up to $20,000 as a result of her injuries.

For the foregoing reasons, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.