PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. ESTATE OF ROBIN M. GOBEN, Deceased, Defendant-Appellee.

Fifth District    No. 5—98—0189

Opinion filed March 9, 1999.

Robert Marc Chemers and Patrick G. Cooke, both of Pretzel & Stouffer, Chartered, of Chicago, for appellant.

Thomas J. Foster, of Jelliffe, Ferrell, Morris, Doerge & Foster, of Harrisburg, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The plaintiff, Pekin Insurance Company (Pekin), filed a complaint for declaratory judgment against the defendant, the estate of Robin M. Goben, deceased (Estate), seeking a declaration that Robin did not qualify as an insured under the automobile liability policy issued to the partnership of Gary Whitlock and Frank Goben, doing business as Freedom Heating & Air Conditioning Company (the Company). The trial court entered summary judgment in favor of the Estate and against Pekin, finding that the Pekin policy provided underinsured-motorist coverage to the Estate and that such coverage could be stacked for a total of $1 million in available coverage based on the presence of two vehicles on the Pekin policy. Pekin filed a timely notice of appeal.

The relevant facts are as follows. Teresa and Frank Goben are the natural parents of Robin Goben. Robin lived with his parents at 345 Wasson Road in Eldorado, Illinois, on March 5, 1997. On that same

date, Robin was a passenger in a 1996 Chevrolet Z28 Camaro driven by Craig Goolsby and owned by Cynthia Heil. Goolsby accelerated the vehicle to an excessive rate of speed and, while traveling south on Crossroads School Road approximately one-half mile north of Borlin Road in Saline County, Illinois, lost control of the vehicle, which caused the vehicle to leave the roadway, become airborne on three separate occasions, and strike a utility pole and a large tree before finally coming to rest upside down. As a result of the accident, Robin was ejected from the vehicle and was killed.

Granite State Insurance Company provided liability insurance coverage to the 1996 Chevrolet Z28 Camaro driven by Goolsby and owned by Heil with bodily injury liability insurance limits of $20,000 per person and $40,000 per occurrence. Granite State Insurance Company has paid to the Estate the $20,000-per-person bodily injury liability limits.

On the date of the accident, plaintiff was the insurer for the following:

"FREEDOM HEATING
GARY WHITLOCK/FRANK GOBIN [sic] DBA
RR #3 BOX 144
345 WASSON ROAD
ELDORADO, IL 62930."

Two vehicles were listed on the declarations page of the Pekin insurance policy, both of which included underinsured-motorist coverage in the amount of $500,000 and, if aggregated together, $1 million, in underinsured-motorist coverage. According to the record, the effective dates for the policy were from December 29, 1996, to June 29, 1997.

Subsequent to the settlement of the claim with Granite State Insurance Company, the Estate made a demand upon Pekin for arbitration pursuant to the terms of the underinsured-motorist-coverage provisions of the Pekin policy issued to Frank Goben. Pekin denied that underinsured-motorist-coverage benefits were available to the Estate, and Pekin filed a complaint for declaratory judgment against the Estate and sought a declaration that Robin did not qualify as an "insured" under the Pekin policy that was issued to the partnership of Gary Whitlock and Frank Goben, doing business as Freedom Heating & Air Conditioning Company. Pekin maintained that it owed no duty or obligation to provide underinsured-motorist-coverage benefits to the Estate in connection with the motor vehicle accident in which Robin was killed.

On January 8, 1998, the Estate filed an answer to the complaint for declaratory judgment and a counterclaim for declaratory judgment. The Estate sought a declaration to the contrary and subsequently

amended its counterclaim to allege that, based on the presence of multiple vehicles listed on the Pekin policy, the underinsured-motorist-coverage benefits available under the policy stacked to provide $1 million in underinsured-motorist coverage (count I), that Pekin's denial of coverage violated the Illinois Insurance Code (215 ILCS 5/155 (West 1996)) (count II), and that, alternatively, Pekin's conduct violated the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)) (count III). On January 15, 1998, the Estate filed a motion for a summary judgment on its amended counterclaim. Pekin then moved to dismiss the Estate's amended counterclaim and also moved for summary judgment on its original complaint.

The trial court dismissed counts II and III and denied Pekin's motion to dismiss count I of the Estate's amended counterclaim. The trial court then entered summary judgment in favor of the Estate and against Pekin on March 27, 1998, finding that Robin qualified as an "insured" under the Pekin policy and that the underinsured-motorist-coverage benefits stacked to provide $1 million in underinsured-motorist coverage. Pekin filed a timely notice of appeal.

■ As we previously stated, this appeal was taken from the trial court's grant of a summary judgment in favor of the Estate and against Pekin. In an appeal from the grant of a summary judgment, we conduct a *de novo* review. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390, 620 N.E.2d 1073, 1077 (1993). Although we recognize that summary judgment is a drastic means of disposing of litigation, it is an appropriate measure in cases where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 390-91, 620 N.E.2d at 1077.

■ The construction of an insurance policy is a question of law (*American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997)) and is an appropriate subject for disposition by way of a summary judgment. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1077. When construing the language of an insurance policy, the court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in their agreement. If the terms found within the policy are "clear and unambiguous," they must be given their plain and ordinary meaning. On the other hand, if the terms within the policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer, which drafted the policy. Provisions that limit or exclude coverage are interpreted liberally in favor of the insured and against the insurer. The court must construe the policy as a whole and consider the type of insurance purchased, the nature of

the risks involved, and the overall purpose of the contract. *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75.

Pekin argues on appeal that the trial court erred in finding that the Pekin policy provided underinsured-motorist coverage to Robin since the Pekin policy was issued to the Company, a partnership, and the Company does not have family members. Hence, Pekin contends that these facts preclude any underinsured-motorist coverage to Robin, Frank Goben's son.

The relevant portions of the Illinois underinsured-motorists-coverage section of the aforementioned policy are as follows:

"A. COVERAGE

1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'underinsured motor vehicle.'

* * *

B. WHO IS AN INSURED

1. You.

2. If you are an individual, any 'family member.'

* * *

F. ADDITIONAL DEFINITIONS

The following are added to the DEFINITIONS Section:

1. 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

* * *

5. 'Underinsured motor vehicle' means a land motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an 'accident' provides at least the amounts required by the applicable law where a covered 'auto' is principally garaged but their limits are less than the limit of this coverage." (Emphasis omitted.)

Page one of the Pekin policy lists words and phrases with special meaning. The relevant ones are as follows:

"A. 'You' and 'your' mean the person or organization shown as the named insured in ITEM ONE of the declarations.

* * *

E. 'Bodily injury' means bodily injury, sickness or disease including death resulting from any of these.

* * *

K. 'Family member' means a person related to you by blood, marriage, or adoption who is a resident of your household, including a ward or foster child."

After reviewing the preceding language contained within the Pekin policy, it is clear that Robin was insured pursuant to the underinsured-motorist coverage. The definition of "you" contained in the Pekin policy could reasonably be interpreted as follows: " 'You' and 'your' mean the *person* [Frank Goben or Gary Whitlock] or *organization* [Freedom Heating & Air Conditioning] shown as the named insured in ITEM ONE of the declarations." (Emphasis added.) Item one of the declarations states as follows:

"FREEDOM HEATING
*GARY WHITLOCK/FRANK GOBIN* [sic] DBA
RR #3 BOX 144
345 WASSON ROAD
ELDORADO, IL 62930."

Hence, the listed insureds are Freedom Heating, Gary Whitlock, and Frank Goben. Moreover, Robin was Frank Goben's biological child, and no one questions that he was a resident of Frank Goben's home at the time of the accident.

We have searched and have found no cases that directly deal with the precise language or set of facts that we have in the instant case. The most similar case that we found was *Patrevito v. Country Mutual Insurance Co.*, 118 Ill. App. 3d 573, 455 N.E.2d 289 (1983). In *Patrevito*, the decedent, owner of Patrevito's Florist and Greenhouse, was killed by a hit-and-run driver. Patrevito's Florist and Greenhouse, owned by decedent and his wife, was the named insured on the insurance policy. This court determined that the designation in the policy of Patrevito's Florist and Greenhouse was merely the name and style under which the decedent and his wife did business. The *Patrevito* court determined that the decedent was the named insured pursuant to the policy under the name and style of the business that he operated since decedent's business was not a separate legal entity and did not exist outside of the existence of the decedent. 118 Ill. App. 3d at 575-76, 455 N.E.2d at 291.

Pekin claims that Robin was not an insured for purposes of underinsured-motorist coverage, and Pekin cites *Polzin v. Phoenix of Hartford Insurance Cos.*, 5 Ill. App. 3d 84, 283 N.E.2d 324 (1972), and *Economy Preferred Insurance Co. v. Jersey County Construction, Inc.*, 246 Ill. App. 3d 387, 615 N.E.2d 1290 (1993), to support its argument. These cases are distinguishable, however, from the case at bar.

In *Polzin*, the insurance policy was issued to "A.B.C. Lithoplate & Graining Services, Inc.," and only the *corporation* was listed as the insured. The policy had an endorsement providing family-protection coverage for uninsured or hit-and-run motor vehicle coverage. Polzin, who was president, chief executive officer, and owner of 50% of the

corporation's stock, was standing on a corner and was injured when he was struck by an uninsured automobile. Polzin served the insurance company with notice, claiming that he was covered by the uninsured-motorist endorsement on the policy issued to the corporation. The insurance company denied coverage. The circuit court entered judgment for the insurance company. On appeal, this court determined that the uninsured-motorist provisions of the policy *issued only to the corporation* insured the corporation and any person using its automobiles. This court stated that since Polzin was not a named insured and was not using one of its vehicles at the time of the accident, he had no coverage rights under the endorsement.

Likewise, in *Jersey County Construction, Inc.*, Nelson Miller purchased insurance for Jersey County Construction, Inc., and the policy was issued in the corporation's name only. Miller's daughter was injured while she was a passenger on an uninsured motorcycle operated by an uninsured motorist, and Miller claimed that the daughter's accident was covered by the uninsured-motorist provisions in the policy issued to the corporation. The circuit court granted Miller's motion for summary judgment and denied the insurance company's motion for summary judgment. On appeal, this court held that the reference in the corporation's insurance policy to "family members" was a nullity since corporations do not have family members. Hence, the policy was not ambiguous, and Miller's daughter was not covered for injuries that she sustained while a passenger on an uninsured motorcycle operated by an uninsured motorist.

■ The case at bar is distinguishable from *Polzin* and *Jersey County Construction, Inc.*, because the insurance policies in those cases were issued only to a corporation and listed only the corporation as the insured. A corporation has a legal existence separate from that of its shareholders, officers, and directors. The instant case, like the *Patrevito* case, however, involves a partnership between two people, Whitlock and Goben. The partnership has no legal existence outside of those two people. In fact, pursuant to Illinois law, a partnership is not a separate and distinct legal entity for most purposes. See *Heinze v. Industrial Comm'n*, 288 Ill. 342, 346, 123 N.E. 598, 600 (1919); *Abbott v. Anderson*, 265 Ill. 285, 290, 106 N.E. 782, 784 (1914). But a partnership may be sued in the names of the partners as individuals doing business as the partnership or in the firm name, or both. Any unsatisfied judgments against the partnership may be satisfied in an action to enforce the individual liability of a partner. 735 ILCS 5/2—411 (West 1996).

"The designation 'd/b/a' means 'doing business as' but is merely descriptive of the person or corporation who does business under some

other name. Doing business under another name does not create an entity distinct from the person operating the business." *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977), *aff'd*, 578 F.2d 721 (8th Cir. 1978).

It is of great significance that in *Polzin* and *Jersey County Construction, Inc.*, the insurance policy was issued only to a corporation and that the corporation was the only named insured. In the instant case, the insurance policy lists the named insureds as "FREEDOM HEATING[,] GARY WHITLOCK/FRANK GOBEN DBA." If Pekin did not intend for Whitlock and Goben to also be listed as insureds, Pekin should not have listed their names as insureds when it drafted the insurance policy.

Because Goben was listed as an insured, which under the Pekin policy insured any of Goben's family members in the event that they were injured or killed by an owner or driver of an underinsured motor vehicle, it is clear that Robin, as Frank's son, was also insured and covered under the terms of the Pekin policy.

Next, Pekin claims that the trial court erred in finding that the antistacking provision contained in the Pekin policy is ambiguous and in allowing the Estate to stack the underinsured-motorist coverage available for the Goben claim.

The touchstone when determining whether an ambiguity exists regarding an insurance policy is whether the relevant portion is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested. "Reasonableness is the key." *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193, 620 N.E.2d 355, 362 (1993).

The underinsured-motorists-coverage endorsement of the Pekin policy discusses the limits of the policy as follows:

"D. LIMIT OF INSURANCE

1. Regardless of the number of covered 'autos,' 'insureds,' premiums paid, claims made or vehicles involved in the 'accident,' the most we will pay for all damages resulting from any one 'accident' is the Limit of Insurance for UNDERINSURED MOTORISTS COVERAGE shown in this endorsement."

Although no limit of liability is included in this endorsement, there is printed below the area where a limit of coverage would appear the following language: "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." The declarations page sets forth two separate vehicles, a 1988 Dodge half-ton pickup truck, designated as "Unit 1," and a 1994 Chevrolet Silverado truck, designated as "Unit 2." The pertinent portion of the declarations page is set forth below:

## "THIS POLICY PROVIDES THOSE COVERAGES WHERE A CHARGE IS SHOWN IN PREMIUM COLUMN BELOW

| COVERAGES | UNIT 001 | | UNIT 002 | | UNIT | |
|---|---|---|---|---|---|---|
| | $ LIMITS | PREMIUM | $ LIMITS | PREMIUM | $ LIMITS | PREMIUM |
| BODILY INJURY LIABILITY | 500/500 | 59.00 | 500/500 | 59.00 | 500/500 | 18.00 |
| EACH PERSON ($1000 UNITS) | | | | | | |
| EACH ACCIDENT ($1000 UNITS) | | | | | | |
| PROPERTY DAMAGE LIABILITY | 500,000 | 55.00 | 500,000 | 55.00 | 500,000 | 5.00 |
| EACH ACCIDENT | | | | | | |
| MEDICAL PAYMENTS | 2,000 | 7.00 | 2,000 | 7.00 | | |
| EACH PERSON | | | | | | |
| UNINSURED MOTORIST ($1000 UNITS) | 500/500 | 8.00 | 500/500 | 18.00 | | |
| EACH PERSON, EACH ACCIDENT | | | | | | |
| (INCLUDES UNDERINSURED MOTORIST) | | | | | | |
| COMPREHENSIVE | 200 | 25.00 | 200 | 44.00 | | |
| ACTUAL CASH VALUE LESS DEDUCTIBLE (INCLUDES TOWING & LABOR) | | | | | | |
| COLLISION | 200 | 71.00 | 200 | 125.00 | | |
| ACTUAL CASH VALUE LESS DEDUCTIBLE | | | | | | |

"

We note that there are two separate vertical columns for each vehicle. One vertical column sets forth the limit of coverage, and the other vertical column sets forth the premium paid for that coverage. The underinsured motorist coverage is $500,000 for each vehicle, and the premium paid for underinsured-motorist coverage for each vehicle was $18. Each of these amounts is set forth twice, once for Unit 1 and once for Unit 2.

■ When the antistacking clause is read together with the language in the endorsement that refers the reader to the declarations page to obtain the limits of coverage, the ambiguity with respect to the amount of underinsured-motorist coverage becomes apparent. We will explain.

There are two underinsured-motorist coverages set forth, each in the amount of $500,000. One interpretation of this could be that the insured has $500,000 in underinsured-motorist coverage available from Unit 1 and an additional $500,000 in underinsured-motorist coverage available from Unit 2, for a total of $1 million in underinsured-motorist coverage. Another interpretation might be that the insured has only $500,000 in underinsured-motorist coverage, the coverage set forth under either Unit 1 or Unit 2.

In *Bruder*, 156 Ill. 2d 179, 620 N.E.2d 355, the Illinois Supreme Court considered whether a plaintiff should be allowed to stack underinsured-motorist coverage on two vehicles set forth on a single business automobile policy. The court reviewed and focused on the declarations page of the insurance policy and the method used by the insurer to set forth its limit of underinsured-motorist coverage. The *Bruder* court held, however, that when the antistacking clause was read together with the declarations page, it was unambiguous because the limit of underinsured-motorist coverage was set forth only one time on the declarations page. The *Bruder* court's decision hinged on the fact that the underinsured-motorist coverage limit was set forth only once on the declarations page, instead of two times, as in the instant case. The *Bruder* court even discussed a case like ours, where the underinsured-motorist coverage is set forth two times on the declarations page, once adjacent to each insured vehicle. The court stated: "There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks. It would be more reasonable to assume that the parties intended that, in return for the two premiums, two *** coverage amounts were afforded." *Bruder*, 156 Ill. 2d at 192, 620 N.E.2d at 362; see also *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 179-80, 370 N.E.2d 1044, 1049 (1977) (court held that the existence of two declarations pages, both setting $10,000 limits for li-

ability for each person, created an ambiguity permitting the aggregation of those coverage amounts); see also *Allen v. Transamerica Insurance Co.*, 128 F.3d 462 (7th Cir. 1997) (court held that antistacking clause was ambiguous because the declarations page to which the clause referred listed two vehicles on the declarations page with separate coverages and separate premiums listed for each vehicle).

Pekin claims that the quoted language from the *Bruder* decision is merely *dictum* and should not be cited as precedent. We disagree. First, the language from the *Bruder* decision was central to the court's rationale for why the insurance policy at issue in *Bruder* was not ambiguous. The Illinois Supreme Court has explained that *dictum* is generally used as an abbreviation of *obiter dictum*, which means a remark or opinion uttered by the way. Expressions such as these are not binding as authority or precedent within the *stare decisis* rule. An expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause if *dictum*, is a judicial *dictum*. Judicial *dictum* is entitled to much weight and should be followed unless found to be erroneous. See *Law v. Grommes*, 158 Ill. 492, 494, 41 N.E. 1080 (1895); *Rhoads v. Chicago & Alton R.R. Co.*, 227 Ill. 328, 337, 81 N.E. 371, 374 (1907) (expression of opinion considered to be judicial *dictum* held to have force of judicial determination). "Even *obiter dictum* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court." *Cates v. Cates*, 156 Ill. 2d 76, 80, 619 N.E.2d 715, 717 (1993).

In any event, whether the quoted passage is viewed as *dictum* or not, we agree with it. We believe that it is a correct and reasonable statement of the law and hereby adopt it.

In the case at bar, since there are two possible interpretations of the Pekin policy, we must construe the policy strictly against Pekin, the party that drafted the policy, and we find that $1 million in underinsured-motorist coverage is available.

In light of the foregoing considerations, we affirm the circuit court's decision.

Affirmed.

WELCH and HOPKINS, JJ., concur.