JOZEF MAKA, Special Adm'r of the Estate of Edyta Maka, Deceased, Plaintiff-Appellant, v. ILLINOIS FARMERS INSURANCE COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—01—2316

Opinion filed June 28, 2002.

Paul B. Episcope, of Paul B. Episcope, Ltd., and David S. Jasmer, of David S. Jasmer, L.L.C., both of Chicago, for appellant.

Worker, Sitko & Hoffman, L.L.C., of Chicago (Danny L. Worker and Michael G. Patrizio, of counsel), for appellee.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Jozef Maka, appeals from a grant of summary judgment in favor of defendant, Illinois Farmers Insurance Company (Farmers). Maka's motion to reconsider the trial court's ruling was denied, and this appeal followed. On appeal, Maka contends the trial court should have allowed him to stack the coverages under two policies due to ambiguity in the provisions.

Maka purchased two insurance policies from Farmers that provided insurance coverage to him and his family for bodily injury or

death resulting from an automobile accident. Each policy covered one automobile. In addition to uninsured coverage, the endorsement to both policies included underinsured insurance coverage. The limits of the liability of the underinsured coverage are $100,000 in one policy (Policy 15) and $50,000 in another (Policy 16), for a total of $150,000 in underinsured coverage.

On December 25, 1998, Maka's daughter, Edyta Maka, was involved in a fatal automobile accident while she was a passenger in a vehicle. The driver of the automobile, David Kierner, had insurance coverage with limits of liability of $20,000. As a result of the accident, $20,000 was paid to Edyta Maka's estate by Equitable Insurance Company (Equitable), Kierner's insurance provider. Maka made a demand to Farmers for underinsured motorist benefits under his two policies.

In response to Maka's demand, Farmers paid Maka $80,000. This payment represents the $100,000 underinsured limit of liability for Policy 15, minus the $20,000 payment received from Equitable. Farmers made no payment on Policy 16. Farmers' refusal to pay the liability amount on Policy 16 led Maka to file an action in the circuit court on May 24, 2000, seeking a declaratory judgment that would entitle him to the $50,000 of additional underinsured coverage provided through Policy 16.

Both policies contained the following antistacking provision:
"Part II—UNINSURED MOTORIST
*Limits of Coverage*
The amounts shown in the Declaration are the limits of liability for Uninsured Motorist which apply subject to the following:
\* \* \*
4. We will pay no more than the limits shown in the Declarations of this policy regardless of the number of vehicles insured, **insured persons**, claims, claimants, policies or vehicles involved in the **occurrence**. The limits provided by this policy may not be stacked or combined with the limits provided by any other policy issued to you or a **family member** by any member company of the Farmers Insurance Group of Companies." (Emphasis in original.)

The endorsements to both policies state:
"**Coverage C-1—UNDERinsured Motorist Coverage**
For an additional premium it is agreed that UNDERinsured Motorist Coverage C-1 is added to Part II of your policy. All of the terms and conditions of Part II—Uninsured Motorist Coverage C—apply to UNDERinsured Motorist Coverage C-1 in addition to the provisions of this endorsement." (Emphasis in original.)

The underinsured coverage endorsement also contains the following "other insurance" clause:

"**Additional Other Insurance Provisions:**

The UNDERinsured Motorist coverage provided by this endorsement is excess over any other collectible automobile underinsured motorist insurance that covers the same **accident** or **occurrence** and applies only to the extent the limits of liability of this policy exceed the limits of liability of the other UNDERinsured motorist insurance. The limits of liability of all other UNDERinsured motorist coverage available to you and any **family member** must be exhausted before the coverage provided by this policy applies." (Emphasis in original.)

Farmers filed a counterclaim for declaratory relief seeking a release from any further obligation to the estate of Edyta Maka following the $80,000 payment from Policy 15. Farmers filed a motion for summary judgment. According to Farmers, under the antistacking provision and the "other insurance" provision, Maka was entitled to only $80,000 after he received the $20,000 from Equitable. Since the $50,000 limit of liability for Policy 16 did not exceed the limits of Policy 15, *i.e.*, the $100,000 limit of liability, Farmers argued that it had no obligation to make any payment to Maka under Policy 15.

The trial court found no ambiguity in the antistacking provisions of Policy 15 and Policy 16. Despite the fact that the antistacking provision is located only in the uninsured portion of the policies, the court concluded that the language of the endorsements providing underinsured coverage clearly incorporated Part II and the limits of coverage of the uninsured portion of the policy. Thus, the court decided that those limits were applicable to the underinsured coverage. Additionally, the court concluded that there was no requirement that the antistacking provision be in boldface type or capital letters, as Maka argued. Finally, the court determined that the fact that Maka paid separate premiums for the two policies bore no impact upon the applicability of the antistacking provisions. To the contrary, the court found the antistacking provisions in both policies reflected the intent of the insurance company and the manifest intent of the insured and thereby prevented Maka from recovering under both policies. The court granted Farmers' motion for summary judgment. This timely appeal followed.

■ Maka presents one issue on appeal: whether the circuit court erred in deciding that Farmers' insurance policies unambiguously prohibit stacking of underinsured motorist coverage. In construing the language of an insurance policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441, 692 N.E.2d 1196, 1199 (1998). Any terms used in a policy should

be given their plain and ordinary meaning and applied as written unless such application contravenes public policy. *State Farm*, 181 Ill. 2d at 441-42, 692 N.E.2d at 1199. In construing an insurance policy, a court must read the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the intent of the parties with the overall purpose of the contract. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997). Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and against the insurer. *American States Insurance Co.*, 177 Ill. 2d at 479, 687 N.E.2d at 75. Additionally, the existence of an ambiguity in an insurance contract will cause a court to adopt a liberal construction of the language used in favor of the insured. *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797, 800, 724 N.E.2d 1042, 1045 (2000). This is because the words used in the policy were chosen by the insurer. *Yates*, 311 Ill. App. 3d at 800, 724 N.E.2d at 1045.

■ Our review of a circuit court order granting summary judgment is *de novo*. *Harrison v. Harden County Community Unit School District No. 1*, 197 Ill. 2d 466, 470-71, 758 N.E.2d 853 (2001). Further, the construction of an insurance policy is a question of law subject to *de novo* review. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441, 692 N.E.2d 1196, 1199 (1998).

The parties do not dispute that Maka's case involves the underinsured coverage. Maka argues that ambiguity exists in some of the crucial provisions of the policy and that the ambiguity allows Maka to stack the liability from the two policies. He argues that two factual aspects of the policies create ambiguity. First, Maka states that, because there is an explicit antistacking clause in the uninsured portion of the policies, but no such antistacking clause in the underinsured endorsement to the policy, the language of the liability provision in the uninsured portion conflicts with and is superseded by the language in the endorsement, which does not include similar limits to liability. Second, Maka asserts that the law in Illinois requires that Farmers explicitly set forth every limitation on coverage in each portion of the policy which Farmers intended to limit.

Initially, we note that Maka does not argue that the antistacking clause itself is ambiguous. The clause states quite clearly, "the limits provided by this policy *may not be stacked or combined with the limits provided by any other policy issued \*\*\** by any member company of the Farmers Insurance Group of Companies." (Emphasis added.) Indeed, language that is virtually identical to that present in this policy has been deemed clear and unambiguous by this court. *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 760-61, 742 N.E.2d 848, 855 (2000).

The problem, according to Maka, is the inclusion of the clause in some areas and its exclusion elsewhere in the policy. Maka argues that, in the manner that the policy is drafted, the insured is led to believe that the limitations applied only in the portion of the policy where those limitations are clearly present. In support of his argument, Maka cites authority which holds that where there is a conflict between the language of the endorsement and other parts of the policy, the endorsement language controls. In *J.M. Corbett Co. v. Insurance Co. of North America*, 43 Ill. App. 3d 624, 627, 357 N.E.2d 125, 128 (1976), for example, the court determined that the terms of the rider or endorsement to the policy controlled over the terms of the actual policy because important exclusions that were found in the policy were not referred to in the rider.

*J.M. Corbett* involved an agreement between Corbett, the main contractor, and Robert Schreiber, a subcontractor, for work to be performed at a navigation project. Pursuant to the agreement, Schreiber procured insurance for the job and submitted a certificate of insurance to Corbett. *J.M. Corbett*, 43 Ill. App. 3d at 625, 357 N.E.2d at 126. The certificate of insurance contained an indemnity provision which provided that the subcontractor (Schreiber), through the insurance company, would indemnify Corbett from any claims for injury or death to persons or damage to property connected with performance under the contract. *J.M. Corbett*, 43 Ill. App. 3d at 625, 357 N.E.2d at 126.

While performing the work for Corbett, a truck rented by Schreiber was involved in an accident and the truck's owner sued Corbett for property damage. *J.M. Corbett*, 43 Ill. App. 3d at 626, 357 N.E.2d at 127. In response to the indemnification provision within the certificate, Corbett demanded that the insurer defend the lawsuit. *J.M. Corbett*, 43 Ill. App. 3d at 626, 357 N.E.2d at 127. The terms of the policy, however, excluded coverage under the policy for work performed while using a rented vehicle, and when the insurer refused to defend the suit due to this exclusion, Corbett filed a declaratory judgment action. *J.M. Corbett*, 43 Ill. App. 3d at 626, 357 N.E.2d at 127.

In reviewing the certificate with the policy, this court found a genuine conflict when the two provisions were read together. *J.M. Corbett*, 43 Ill. App. 3d at 627, 357 N.E.2d at 128. The certificate indicated that Corbett could anticipate full indemnification, while the policy created an exclusion for rental vehicles. Additionally, the actual policy was never seen by Corbett, and the certificate made no reference to exclusions or limitations. Therefore, the court decided the extent of the actual coverage was ambiguous and concluded that the terms set

forth in the endorsement superseded those in the policy. *J.M. Corbett*, 43 Ill. App. 3d at 627, 357 N.E.2d at 128. In reaching this decision, however, the court recognized that where a contract of insurance consists of the policy and other accompanying papers which are incorporated or referred to therein, all of the documents must be construed together to determine the effect and meaning of the contract. *J.M. Corbett*, 43 Ill. App. 3d at 626, 357 N.E.2d at 128.

■ While it is true that the endorsement section issued by Farmers to Maka providing underinsured motorist coverage does not include the exact limitation language found in the uninsured portion of the policy, we do not see how, upon reading the endorsement with the policy, the insured would be misled as to whether the same exclusions apply. The endorsement that sets forth the terms of the underinsured coverage affirms that: "All of the terms and conditions of Part II— Uninsured Motorist Coverage C—apply to UNDERinsured Motorist Coverage C-1 in addition to the provisions of this endorsement." As stated previously, one of the terms and conditions of the uninsured motorist coverage is that the limits provided by that policy may not be stacked with any other policy. It is thus clear that any limitations of coverage in Part II are applicable to the endorsement and the under-insured coverage available. In other words, the coverage from either portion of the policies may not be combined and the insured may not collect from both policies from one accident or occurrence.

While in *J.M. Corbett* no reference of the relevant exclusions was made in the certificate that Corbett received and Corbett never actually saw the policy, the same is not true in this case. Rather, the terms of the policy in this case are more analogous to the provisions set forth in the policies at issue in *Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Co. of Wausau*, 121 Ill. App. 3d 954, 460 N.E.2d 475 (1984), and *Pekin Insurance Co. v. American Country Insurance Co.*, 213 Ill. App. 3d 543, 572 N.E.2d 1112 (1991). In *Lezak*, the court found no conflict or ambiguity when reading the certificate and the policy because the certificate referred to the policy, which enunciated certain exclusions. *Lezak & Levy Wholesale Meats, Inc.*, 121 Ill. App. 3d at 957, 460 N.E.2d at 477. Similarly, in *Pekin*, the language found within the policy controlled when the certificate specifically stated that it was subject to all of the terms, exclusions and conditions of the policy. This statement thereby instructed the insured to refer to the policy to ascertain the extent of the coverage. *Pekin*, 213 Ill. App. 3d at 547, 572 N.E.2d at 1115. The same reference to applicable limitations and exclusions can be found in the underinsured motorist coverage endorsement to Maka's policy with Farmers. Upon a complete reading of the policy, Maka would have realized the limitations of the

two types of coverage. Further, there is no conflict between the language of the uninsured coverage and the underinsured endorsement. Consequently, the limitations found in the uninsured policy section and referred to in the underinsured endorsement, which clearly prohibit stacking or combining of policies, control.

■ The second assertion made by Maka is that, if Farmers intended to preclude stacking of the two policies, there is authority in Illinois which requires it to state such limitation explicitly in that section of the policy so as to avoid ambiguity. While Maka suggests that the trial court misinterpreted or misapplied the holdings of *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 370 N.E.2d 1044 (1977), and *Jones v. State Farm Mutual Automobile Insurance Co.*, 289 Ill. App. 3d 903, 682 N.E.3d 338 (1997), we concur with the trial court that neither these cases nor other cases proffered by the appellant have any relevance with respect to the issue of ambiguity within Maka's policies. *Squire* reiterated the importance of clearly stating any limitations that the insurer intends to impose upon the insured because any ambiguity must be resolved in favor of the insured. *Squire*, 69 Ill. 2d at 179, 370 N.E.2d at 1050. *Jones* reached a similar holding, based specifically on the circumstances surrounding a particular policy. In *Jones*, the court held that the antistacking language was, on its face, ambiguous, because it could not be read to have one meaning. *Jones*, 289 Ill. App. 3d at 916, 682 N.E.2d at 248.

In *Squire*, the insurer sought a declaration that a provision within a policy which limited recovery to $10,000 per person was clear in stating that two uninsured policies, each with $10,000 limits of liability, could not be stacked. *Squire*, 69 Ill. 2d at 174, 370 N.E.2d at 1046. Because there were two policies with two declarations pages and two limits of liability found on each page, the court held that the insurer should have been more explicit in its limitation language. *Squire*, 69 Ill. 2d at 178-79, 370 N.E.2d at 1049. An antistacking clause was present in the basic personal injury protection coverage, but in the uninsured portion, there was no language that incorporated this antistacking clause with the uninsured coverage. *Squire*, 69 Ill. 2d at 173, 370 N.E.2d at 1046.

*Squire* and *Jones* do not conflict with our decision herein because there is no ambiguity in the antistacking clause or its applicability to the underinsured endorsement to the policy. Maka argues that when an insured refers to the underinsured motorist coverage endorsement to determine his coverage and limits thereunder, the insurer should have included the antistacking clause within the endorsement so as to avoid any potential ambiguity. This was done, however, with the incorporation of the terms and conditions of Part II. In fact, when an

insured refers to the underinsured motorist coverage endorsement to determine his coverage and limits, it is directly indicated that the Part II—Uninsured limitations apply, including the antistacking provisions.

■ Maka next relies on *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797, 724 N.E.2d 1042 (2000), and *Pekin Insurance Co. v. Goben*, 303 Ill. App. 3d 639, 707 N.E.2d 1259 (1999). In *Yates and Pekin*, the issue was whether the declarations page and the policies' antistacking provisions were inconsistent so as to create an ambiguity and thereby nullify the applicability of the antistacking clause. *Yates*, 311 Ill. App. 3d at 800, 724 N.E.2d at 1045; *Pekin*, 303 Ill. App. 3d at 648, 707 N.E.2d at 1265.

In both cases, the decision by the court to allow the two coverages to be stacked rested on the fact that the declarations page was for *one* policy which provided coverage for *two* vehicles with two premiums. *Yates*, 311 Ill. App. 3d at 800, 724 N.E.2d at 1045; *Pekin*, 303 Ill. App. 3d at 648, 707 N.E.2d at 1265. Therefore, when the insured referred to the declarations page to determine the limits of coverage, there were two amounts listed, one for each vehicle. As stated in *Pekin*, there were two possible interpretations of these provisions: (1) the insured had $500,000 in underinsured motorist coverage available from one vehicle, *and* an additional $500,000 in underinsured motorist coverage from the second vehicle; or (2) the insured had only $500,000 in underinsured motorist coverage, the coverage set forth under one of the two vehicles. *Pekin*, 303 Ill. App. 3d at 648, 707 N.E.2d at 1265. Because the policy was subject to two interpretations, an ambiguity was created, and the policy would be construed in a manner most favorable to the insured. *Yates*, 311 Ill. App. 3d at 800, 724 N.E.2d at 1045; *Pekin*, 303 Ill. App. 3d at 649, 707 N.E.2d at 1266. The court in *Pekin* fully explained that its finding of ambiguity hinged solely on the fact that the declarations page to which the clause referred listed two vehicles with separate coverages and separate premiums. *Pekin*, 303 Ill. App. 3d at 649, 707 N.E.2d at 1266.

This determinative factor is not present in Maka's policy. First, Maka has two separate policies, one for each vehicle. The limits of coverage, liability amounts and premiums are therefore on separate declarations pages. Second, the declarations page clearly states, "It is subject to all the other terms of the policy." This statement is another way of alerting the insured to refer to the policy to obtain the applicable limitations. Because none of the circumstances that led the courts in *Yates* and *Pekin* to find ambiguity are found in Maka's policy, we do not find these cases persuasive.

Additionally, the recent case of *Hall v. General Casualty Co. of Illinois*, 328 Ill. App. 3d 655, 766 N.E.2d 680 (2002), does not change

our conclusion. As stated in *Hall*, the case was nearly identical to *Yates* in the respect that the declarations page could reasonably be construed to provide for additional liability coverage where a premium was shown for a second vehicle. *Hall*, 328 Ill. App. 3d at 658-59, 766 N.E.2d at 684. The decision to allow stacking rested on the presence of language on the declarations page: "Insurance is provided where a premium is shown." This language was directly contradictory to the antistacking clause. *Hall*, 328 Ill. App. 3d at 659, 766 N.E.2d at 684. Similar language is not present on Maka's declarations page.

■ When faced with interpreting antistacking clauses, such clauses will be enforced as written if the clause is unambiguous and does not violate public policy. *Allstate Insurance Co. v. Gonzalez-Loya*, 226 Ill. App. 3d 446, 449, 589 N.E.2d 882, 885 (1992). In determining whether there is an ambiguity, the clause must be read in its factual context and not in isolation. *Glidden v. Farmers Automobile Insurance Ass'n*, 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250 (1974). As we have already stated, we do not find ambiguity in Farmers' antistacking provision, or in its incorporation of the endorsement of underinsured coverage.

■ Further, the antistacking clause does not raise any public policy considerations. While Maka does not directly raise this issue, we are mindful that the Illinois Insurance Code now expressly authorizes the use of antistacking provisions in automobile policies. 215 ILCS 5/143a—2(5) (West 1992). In fact, the clause used by Farmers applies some of the statutorily authorized language from section 143a—2(5), which permits an insurer to limit recovery to the higher of the applicable limits of coverage, if the insured has coverage under more than one policy. 215 ILCS 5/143a—2(5) (West 1992).

■ The antistacking provision found in the policies clearly and unequivocally specifies that the liability limits of two policies may not be stacked. Additionally, the "other insurance" clause in the underinsured endorsement for both Policy 15 and Policy 16 informs the insured that the coverage under Policy 16 is excess coverage over Policy 15 and applies only if the limits of liability of Policy 16 exceed the limits of liability of the other underinsured coverage. Under these policies, there would be no additional coverage under Policy 16 when the liability limit of $50,000 is less than that present in Policy 15. Farmers' denial of coverage under Policy 16 was in accordance with the terms of the policy into which Maka entered. Therefore, the terms of the policies should be enforced as written. Accordingly, we affirm

the trial court's decision to grant summary judgment in favor of Farmers.

Affirmed.

BUCKLEY and O'MARA FROSSARD, JJ., concur.